UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARSHALL BRIAN CHANDLER                                                                   PLAINTIFF

V.                                                                    CIVIL ACTION NO. 3:13-cv-555-LRA

RICKY CROSS, ET AL.                                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Motion to Dismiss, or in the Alternative for Summary Judgment, filed by Defendants Chris Barnes and Kevin Sanderson [64]; the Motion for Summary Judgment filed by Defendant Vicki Currie [71]; and, the Motion for Summary Judgment [73] filed by Defendants Ben Blaine, Randy Chatham and Wes Shivers.  Having considered the entire record in this matter, including all the pleadings, exhibits to the motions, and the sworn testimony of Plaintiff Marshall Brian Chandler given at the July 17, 2014, *Spears* hearing, the Court hereby finds that the dispositive motions at [64] [71] and [73] are meritorious and shall be granted.

**I. Background**

Plaintiff is an inmate in the custody of the Mississippi Department of Corrections, currently housed at the Central Mississippi Correctional Facility, who is proceeding *pro se* in this litigation.  Plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983, claiming that unserved Defendant Ricky Cross arrested him and conspired with Defendants

Chatham, Humphreys, Shivers, Currie, Sanderson and Barnes[1] to coerce a confession from him, which was thrown out at trial.[2] Plaintiff also challenges the conditions of his confinement at the Rankin County Jail, claiming that Defendants had him held in a cell with no running water or a toilet for several days, in furtherance of their conspiracy to coerce a confession.

The Court held an omnibus or *Spears* hearing in this matter on July 17, 2014, at which Plaintiff was afforded the opportunity to fully explain his claims.[3] All parties ultimately consented to the undersigned deciding this case in its entirety. [68]. 28 U.S.C. § 636.

Defendants set forth the facts by reference to the Madison County and City of Madison police records regarding Chandler. These records reflect that Chandler was arrested on October 18, 2011, in Madison. The incident report indicates that an Officer Thomas and Defendant investigator Vicki Currie were sent to the University of Mississippi Medical Center on October 17, 2011, for a report of a possible kidnapping and assault. [71-2, p. 3]. They interviewed Zachariah Henley, who reported that he had

---

[1] Defendants Currie and Cross were investigators with the City of Madison, Mississippi. Defendant Chatham was an investigator with the Rankin County Sheriff's Department. Defendants Sanderson and Barnes were agents with the Federal Bureau of Investigation. The remaining Defendants were deputies with the Rankin County Sheriff's Department. [1], [65]. Defendants Cross and Humphreys were never served with process. However, for the reasons set out herein, the claims against them fail as well.

[2] Plaintiff was convicted of aggravated assault, conspiracy and kidnapping, in the Circuit Court of Madison County, Mississippi, without the confession at issue having been admitted.

[3] *See Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985).

been kidnapped the previous day and that his hands and feet had been duct-taped. He was beaten, then driven to a rural gravel road in Rankin County and stripped naked. His kidnappers then continued to beat him until he lost consciousness and was left for dead. He later woke up and walked to the nearest house for help. Henley suffered from a broken jaw, a broken left arm, and numerous cuts and bruises. He informed Defendant Currie that Chandler was one of the persons who kidnapped and assaulted him. He recognized Chandler because Chandler had assaulted him about a month before, and Henley had filed charges at that time against Chandler for simple assault.

According to Chandler's sworn testimony, he was arrested the next day and questioned by Officer Ricky Cross and another officer, and he denied the allegations. Once he was booked at the Madison County Jail, he again denied all charges. Because the assault took place in Rankin County, Defendant Chatham, Rankin County investigator, was contacted and began investigating on October 18, 2011. He went to the Madison P.D. to question Chandler on October 25, 2011. On the same day, Defendant Chatham spoke with Chandler's mother, Kay Carter, who admitted that she had Chandler's phone and that she had deleted a video of the assault with the help of his pregnant girlfriend, Brianna Lewis. Because of this, arrest warrants were issued for Carter and Lewis on October 26, 2011, and they were arrested. Chandler was transported to the Rankin County Jail on October 26, 2011, and claims he was again interrogated there by Defendants Chatham and Humphreys. He agreed to take a polygraph at that time.

Chandler was interrogated again on October 27, 2011, at the Rankin County Jail by Defendant FBI special agent Kevin Sanderson, Madison investigator Ricky Cross (unserved Defendant), Defendant Rankin County investigator Chris Barnes, and an unknown officer. According to Chandler, they believed that he was a member of the Latin Kings Organization because of papers which were in his possession. Chandler claims that during that interrogation, they showed him the arrest warrants for his mother and girlfriend. They told him that Lewis had been arrested, and their child would be born in prison; further, that his mother would lose her job and retirement benefits upon her arrest. If he would admit the charges, Defendants assured him that the warrants for his Mom and girlfriend would "disappear."

Because of this, Chandler contends that he confessed. Although Defendant Currie was not present for this interview when he confessed, and he was never questioned by Currie after his initial arrest, Chandler charges that she "orchestrated" a conspiracy with the other Defendants to get his confession, violating his Fourth, Fifth, and Fourteenth Amendment rights.

Defendant Ben Blaine was the jail administrator at Rankin County. Chandler charges that the other Defendants told Blaine to put Chandler in a holding cell without running water or a toilet and no access to a phone. Defendant Shivers was the Rankin County sheriff's deputy who transported Chandler from Madison to Rankin County. According to Chandler, Shivers made verbal threats, saying he would get a life sentence if he did not confess to the crime.

Excerpts from the trial transcript from *State of Mississippi v. Marshall Brian Chandler*, Cause No. 2012-0095, in the Circuit Court of Madison County, Mississippi [71-3] confirm that Judge John H. Emfinger conducted a hearing on the motion to suppress Chandler's confession on June 18, 2012. Judge Emfinger found that the officers did not provide Chandler with a *Miranda* warning prior to his interrogation on October 27, 2011. Further, Sanderson's statements regarding Chandler's family members "crossed the line" and constituted an "improper inducement for this Defendant to help himself...." [71-3, p. 5].

Chandler's confession was not used at trial against him. Nevertheless, he was convicted of the charges, and his challenge to that conviction is pending in the state courts.

## II. Standard of Review

"Summary judgment is appropriate if the moving party can show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Renda Marine, Inc.,* 667 F.3d 651, 655 (5th Cir. 2012) (quoting Fed.R.Civ.P. 56(a)). "A factual dispute is 'genuine' where a reasonable party would return a verdict for the nonmoving party." *Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273, 282 (5th Cir. 2003) (quoting *Lukan v. North Forest Indep. Sch. Dist.,* 183 F.3d 342, 345 (5th Cir. 1999)). When considering a summary judgment motion, a court "must review all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Parish Fire Dist. No. 5,* 717 F.3d 431, 433 (5th Cir. 2013). However, "[u]nsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003) (citing *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir. 2002)).

## II. Discussion of the Law

Chandler sued all Defendants in their individual capacities, and they all assert that they are entitled to qualified immunity. Qualified immunity promotes the necessary, effective, and efficient performance of government duties, *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982), by shielding from suit all but the "plainly incompetent or those who knowingly violated the law," *Malley v. Briggs*, 457 U.S. 335, 341 (1986); *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009); *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008). When a defendant asserts this defense, the plaintiff has the burden of proving that it is inapplicable. *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007); *Atteberry v. Nocona General Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005). To overcome the immunity, a plaintiff must show that there has been a violation of a clearly established federal constitutional or statutory right and that the official's actions violated that right to the extent that an objectively reasonable person would have known. *Malley,* 457 U.S. at 341.

The case against the federal actors herein are known as *Bivens* suits, which are suits for monetary damages against individual federal government officials for constitutional torts. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Federal government officials are shielded from liability "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

A two-part analysis is applied in assessing a claim of qualified immunity. First, the Court must determine whether Chandler's allegations even establish a constitutional violation. *Hope v. Pelzer,* 536 U.S. 730, 736 (2002). "If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194 (2001). If a violation is made out, then the Court must determine whether the right was "clearly established." For the reasons that follow, the Court finds that Chandler has failed to rebut Defendants' assertions of immunity by competent evidence.

Plaintiff claims that these Defendants violated his rights under the Fifth and Fourteenth Amendments by conspiring to obtain his confession regarding the criminal charges. The Fifth Amendment requires that no person be compelled to be a witness against himself in a criminal case. However, in a §1983 action, no Fifth Amendment claim against law enforcement exists if the confession is not introduced against the plaintiff at trial. *Chavez v. Martinez*, 538 U.S. 760, 768-69 (2003); *Murray v. Earle*, 405 F.3d 378, 385 n. 11 (5th Cir. 2005). In Chandler's case, his confession was excluded, and the jury convicted him on other evidence, including the victim's identification. Because of this, no violation of Chandler's Fifth Amendment right against self-incrimination exists. Although Plaintiff contends that the confession was used when the case was presented to the grand jury for indictment, this factor would not establish § 1983 liability since the conviction is not based

7

upon it.  Nevertheless, any such claim would be barred by *Heck v. Humphrey,* 512 U.S. 477, 487-488 (1994), as it would call into question the validity of his conviction and would not be cognizable under § 1983 unless the conviction was reversed.

Additionally, the flaws in *Miranda* warnings do not provide a basis for § 1983 liability.  *Foster v. Carroll Cnty*, 502 Fed. App'x 356, 358 (5th Cir. 2012) (citing *Chavez*, 538 U.S. at 772) ("violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself....").  See also *Warren v. Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989) (alleged Miranda violation not actionable under § 1983).  This is also true in the actions against the federal Defendants, Sanderson and Barnes.

The Fifth Circuit Court of Appeals has held that under *Chavez v. Martinez,* "coercive questioning by a law enforcement officer may support a § 1983 substantive due process 'shocks the conscience' claim even when the suspect's statements are not used at trial." *Edmonds v. Oktibbeha Cnty.*, 675 F.3d 911, 916 (5th Cir. 2012).  Hence, this Court must determine if Defendants' actions in this case could be found to be "egregious" or "conscience shocking" under *Chavez* so as to violate Chandler's due process rights.  Such conduct must "violate the decencies of civilized conduct" and be "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *Doe ex rel Magee v. Covington County School District ex rel Keys*, 675 F.3 849, 867 (5th Cir. 2012).  The burden to show such conduct is "extremely high" and requires "stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Id.*  "Conscience shocking" is, as the

phrase implies, a very high standard, reserved for very low behavior. *Depoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005).

These substantive due process cases confirm that the use of extreme force by police officers may be required in order to "shock the conscience." More often than not, "conscience shocking" provides relief for physical abuse, or where the state actors engage in "extreme or intrusive physical conduct." *Ramirez De Leon v. Mujica-Cotto*, 345 F.Supp. 2d 174, 186 n. 6 (D.P.R. 2004); *see also Rochin v. California*, 342 U.S. 165 (1952) (due process violated when evidence was obtained by involuntary stomach pump); *Beecher v. Alabama*, 389 U.S. 35 (1967) (police shot a suspect in the leg, held a loaded gun to his face, then fired a rifle next to his ear and told him if he didn't tell the truth, he would be killed). A violation was found when a state trooper used his vehicle to terrorize a motorist. *Checki v. Webb*, 785 F.2d 534, 535-36 (5th Cir. 1986). And, a violation was found when an officer intentionally struck a tourist. *Shillingford v. Holmes*, 634 F.2d 263, 264-65 (5th Cir. 1981). And, when a police officer interfered with the medical treatment of a defendant while he was "screaming in pain." *Martinez v. City of Oxnard,* 337 F.3d 1091, 1092 (9th Cir. 2003).

In this case, no force whatsoever was used on Chandler. Legitimate arrest warrants were obtained for his mother and girlfriend, based upon their alleged actions in destroying cell phone evidence from Chandler's phone showing Henley's kidnapping and beating. It was true that the warrants were issued, and no lies were told in this regard. They were charged with "hindering prosecution in the first degree" under Miss. Code Ann. § 97-9-105, a felony carrying up to five years in prison and a $5,000 fine. Chandler's girlfriend, Brianna

Lewis, was actually arrested the evening the warrant was issued. All of this occurred before the interrogation that resulted in the confession, and the statements made by Defendants were true, based upon these warrants.

Not all the named Defendants in this case were even present when the warrants were posed to Chandler, such as Currie, Blaine, and Shivers. Apparently, Defendant Chatham presented the warrants for Plaintiff's mother and girlfriend and obtained the confession, along with Sanderson and Barnes. They are the only individuals who could possibly be found liable for any substantive due process violation. Their actions were all verbal and were based upon the truth— warrants had been obtained and arrests were imminent. In fact, Plaintiff's girlfriend had been arrested.

The Court has considered the case law regarding such claims and finds that these Defendants' actions could not be found to violate the Constitution under the circumstances presented by Plaintiff. Misleading a defendant may not even be considered "coercive," as "trickery is not automatically coercion." *United States v. Bezanson-Perkins*, 390 F.3d 34, 41 (1st Cir. 2004). As Defendants point out, cases in which no force was used rarely result in a constitutional violation. *See Crowe v. County of San Diego,* 359 F.Supp.2d 994, 1034 (S.D. Cal. 2005) (summary judgment granted as "although defendants employed a 'good cop/bad cop' approach during some of the interviews, such a manner of interrogation is relatively common and certainly not shocking, even when juveniles are involved")*; Higazy v. Millennium Hotel & Resorts,* 346 F.Supp.2d 430, 451 (S.D.N.Y. 2004) (summary judgment granted as FBI Agent's "alleged threats, whether intended to coax a confession or

10

arbitrarily frighten, may be the subject of proper criticism, but they are not actionable under the Fifth Amendment's due process clause"); *Perkins v. Metro. Transit Author. of Harris Cnty.,* No. CIV. A. H-11-1102, 2012 WL 5198203, at *6 (S.D. Tex. Oct. 19, 2012) (methods must be "so brutal and so offensive to human dignity")*; Barber v. Santa Maria Police Dep't,* 2009 U.S. Dist. LEXIS 72651, 16 (C.D. Cal. Feb. 9, 2009) (threatening to arrest a suspect's loved one unless the suspect confessed insufficient to "shock the conscience"); *Chavez*, 538 U.S. at 774-75 (an officer's un-*Mirandized* coercive interrogation of a wounded man in pain and receiving treatment was not sufficiently egregious); *Deshawn v. Safir*, 156 F.3d 340, 348 (2nd Cir. 1998) (deceptive, prolonged interrogation in the absence of physical coercion, fear, torture, or emotional or psychological overbearance of the defendant's will insufficient); *Tiner v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005) (no due process violation where officers repeatedly interrogated the suspect over several days and told her she would never see her children again unless she confessed, that she would be going to the electric chair, and that her lawyer had abandoned her).

The Court concludes that no discovery would assist Plaintiff in setting forth a constitutional claim. There is no material issue of genuine fact in this case, as Defendants do not dispute Plaintiff's version of the events. Based upon the facts as stated by Plaintiff, the Court finds that these Defendants are immune from § 1983 liability and Plaintiff has failed to establish a cognizable constitutional claim against any Defendant regarding his confession to the crimes for which he was convicted, or any other claims related to his interrogation by these Defendants.

Plaintiff also complained about the conditions of his confinement while housed at the Rankin County Jail. Specifically, he was placed in a booking isolation cell with no bathroom for seven days after his arrest. Yet, Plaintiff testified at the omnibus hearing that he suffered no long-term injuries due to not having running water in the cell or a toilet. He testified that the only hardship was that he had to ask the jailers for permission to use the bathroom, and he suffered from pain of having to hold his urine; he felt like his bladder was going to burst. [73-2, p. 29]. Although he felt like he was being "punished," he suffered no injuries except discomfort.

The Court finds that Plaintiff's allegations, taken in a light most favorable to him, simply do not rise to the level of a constitutional violation. Pretrial detainees have a due process right not to be subjected to jail conditions that are imposed for the purpose of punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). In order to succeed on a claim under § 1983 alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in "serious deficiencies" in providing for his "basic human needs." *Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009). A punitive purpose may be inferred where the conditions are not reasonably related to a legitimate governmental interest. *Hamilton*, 74 F.3d at 105.

In this case, Plaintiff cannot show "serious deficiencies" in providing for his basic human needs. He was allowed to go to the bathroom, just not immediately upon demand.

He was fed and clothed and provided with life's necessities. Accepting all his testimony and allegations regarding his conditions as true, no constitutional claim has been set forth.

**IT IS THEREFORE ORDERED** that Defendants' Motions [64, 71 & 73] are hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the Complaint is dismissed without prejudice, and a separate Final Judgment in favor of all Defendants shall be entered on this date.

SO ORDERED, this the 26th day of September 2015.

                                                  /s/   Linda R. Anderson
                                                  UNITED   STATES   MAGISTRATE   JUDGE